UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NIKOL SNEZANA GEROU
and KENNETH ROY GEROU,

        Plaintiffs,

  v.

TITANIA WHITTEN,

        Defendant.

Case No. 25-cv-1593-pp

---

**ORDER GRANTING MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND DISMISSING CASE**

---

On October 16, 2025, the plaintiffs filed a document titled a "Non-Statutory Petition in Equity" against the panel trustee appointed in their Chapter 7 bankruptcy case. Dkt. No. 1. The plaintiffs also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court will grant the plaintiffs leave to proceed without prepaying the filing fee, but because the petition—which the court construes as a complaint—does not state a claim for relief and because amendment would be futile, the court will dismiss the case.

**I.    Background**

Between July 2025 and October 2025, the plaintiffs filed four civil cases in this court, as well as a petition for Chapter 7 relief in the bankruptcy court and two related adversary proceedings in the bankruptcy court. In re Gerou, *et al.*, Case No. 25-24068 (Bankr. E.D. Wis.) (filed July 17, 2025); Gerou, *et al.* v. George, *et al.*, Case No. 25-cv-1160 (E.D. Wis.) (filed August 5, 2025); Gerou, *et*

1

al. v. George, et al., Adv. No. 25-2114 (Bankr. E.D. Wis.) (filed August 29, 2025; closed Nov. 4, 2025); Gerou v. Nelnet, Adv. No. 25-2115 (Bankr. E.D. Wis.) (filed September 24, 2025); Gerou, et al. v. Marine Credit Union, et al., Case No. 25-cv-1569 (E.D. Wis.) (filed October 14, 2025); Gerou, et al. v. Kaufman, Case No. 25-cv-1592 (E.D. Wis.) (filed October 16, 2025); Gerou, et al. v. Whitten, Case No. 25-cv-1593 (E.D. Wis.) (filed October 16, 2025). All their civil cases relate to matters in their bankruptcy case.

**II.     Motion for Leave to Proceed Without Prepaying Filing Fee**

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose her financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The caption motion for leave to proceed without prepaying the filing fee lists both Nikol and Kenneth Gerou as plaintiffs, but only Nikol signed the motion. See Dkt. No. 2. The motion states that Nikol is employed at a hospital and receives $3,611 in net salary on a bi-weekly basis. Id. at 1. Assuming that "bi-weekly" means every other week, Nikol's monthly net income would be approximately $7,222. The application avers that Kenneth Gerou is self-employed and is "paid irregularly;" it avers that "new contracts are starting but pay out isn't until completions and at different milestones being met." Id. The application avers that the plaintiffs have $26.00 in cash, savings or checking accounts and that they own no property of value. Id. at 2. It lists monthly expenses of $2,700 in mortgage payments, $400 to $500 for utilities, $65 for

2

cell phone service, $115 for internet service, $2,500 for groceries, $500 for "[m]aintenance/[r]epairs," $250 for car insurance and related expenses, $250 for tuition and $500 for medical and dental expenses. Id. That totals about $7,280 to $7,380 in monthly expenses. The application avers that the plaintiffs have three children and have a pending bankruptcy case. Id.

The court finds that the plaintiffs—or, if the application was filed only on behalf of Nikol, Nikol Gerou—do not have the ability to prepay the filing fee and will grant the motion for leave to proceed without doing so. The court advises the plaintiffs, however, that they still are responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; she still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). The plaintiffs must pay the filing fee over time, as they are able.

### III. Screening

#### A. Legal Standard

The court next must "screen" the complaint to decide whether the plaintiffs have raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant,

3

"however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Although courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendant, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B.  The Complaint

The caption of the pleading the plaintiffs filed lists the court as the United States District Court for the Eastern District of Wisconsin, "Sitting in Equity Under Article III, Section 2, Clause 1 of the U.S. Constitution." Dkt. No. 1 at 1. It is titled "Non-Statuatory [sic] Petition in Equity Petition for Specific Performance and Other Equitable Relief." Id. It describes the plaintiffs as "Cestui Que Trust Beneficiaries," and lists the defendant as "Trustee/Attorney Titania Whitten." Id.

The plaintiffs allege that they are seeking "to compel the performance of a fiduciary duty arising under trust law, including a bond, an assignment, and a settlement agreement." Dkt. No. 1 at 1. They allege that on or about August 5, 2025, they delivered a "duly executed express trust instrument," an "intangible bond certificate as trust corpus" and a "lawful assignment and appointment of

4

trustee" to Virginia George—at that time, the appointed Chapter 7 bankruptcy trustee in their bankruptcy proceeding. Id. They allege that they then transferred these documents to the defendant, the successor trustee, after George resigned. Id. at 2. The plaintiffs allege that they "filed the assignment with the court" and sent "the settlement agreement and trust documentation" to the defendant by email. Id. They assert that the defendant "has not denied, rebutted, or returned the documents, thereby constituting tacit and equitable acceptance." Id. They contend that the defendant has not performed their request and has not "taken any affirmative steps to administer the trust, manage the bond asset, or fulfill her fiduciary obligations." Id.

The plaintiffs allege that they have attempted to "obtain a certified copy of [the defendant's] oath of office, which is required for any individual performing fiduciary functions under the authority of the United States." Id. They state that even though they were unable to obtain a copy of the purported oath, the defendant has not "denied her fiduciary capacity" or "disclaimed the trust assignment or settlement agreement," which they say means that she has "constructively accepted her duties" under the law and her oath. Id. They argue that the defendant is bound by her attorney's oath to uphold and defend the Constitution, which "further reinforces the equitable obligation to perform under the trust instruments she has accepted." Id.

The plaintiffs maintain that they are entitled to performance because there is a "valid and enforceable trust," that the defendant possesses the "original bond asset—a unique intangible trust corpus" and that the defendant's "obligations are definite, non-speculative, and clearly set forth." Id. They allege that the defendant's failure to perform is a "violation of her equitable duties," a "denial of the beneficiaries' equitable rights," a

5

"constructive breach of her public oath under the U.S. Constitution" and a "denial of due process in trust administration." Id. at 3. The plaintiffs ask the court to order specific performance and to compel the defendant to "[a]dminister the trust and bond asset currently in her possession"; "[e]xecute all fiduciary duties arising under the assignment, trust instrument, and settlement agreement"' and "[f]ulfill the obligations owed to the beneficiaries in law and equity." Id. They also seek a declaration that failing to perform constitutes a breach of fiduciary duties. Id. They ask the court to appoint a substitute trustee if necessary to "preserve the integrity of the trust." Id. The plaintiffs add that they are bringing their complaint "solely in equity" and "seek the intervention of the Chancellor of this Court to prevent continuing injury, resolve a trust impasse, and preserve the integrity of the equitable estate." Id. at 4.

The plaintiffs attached to the complaint several documents filed in their bankruptcy case. Dkt. No. 1-1. These include several UCC financing statements purporting to assign certain "collateral" to the defendant. Id. at 3–25. The "collateral" described includes the plaintiffs' birth certificates (which they state are "contract[s]"), Social Security numbers, drivers' licenses and professional licenses. See id. at 24.

    C.    Analysis

The plaintiffs' claims fail for multiple reasons. "First, under what is known as the *Barton* doctrine, a plaintiff generally may not sue a private trustee or the trustee's attorney without first obtaining leave of the bankruptcy court." Hughes v. Miller, 521 F. Supp. 3d 781, 789 (E.D. Wis. 2021) (citing Barton v. Barbour, 104 U.S. 126 (1881); Matter of Linton, 136 F.3d 544, 545 (7th Cir. 1998); 1 Collier on Bankruptcy §10.01). It does not appear that the

plaintiffs sought leave from the bankruptcy court to sue their trustee, let alone received leave to do so. Bankruptcy trustees also are entitled to "quasi-judicial immunity from suit for actions taken during the bankruptcy case." Id. (collecting cases). These two jurisdictional bars alone compel dismissal of the plaintiffs' claims.

Even setting those jurisdictional prerequisites aside, the plaintiffs' claims fail on the merits. The "Non-Statutory Petition in Equity" is vague—perhaps deliberately so—about the "trust instruments" and "bond certificates" the plaintiffs purportedly assigned to the defendant. The plaintiffs do not describe or identify these "instruments" or "certificates." The attachments show that they attempted to transfer various properties to the defendant via a UCC financing statement, including their birth certificates and Social Security numbers. Though they do not say so explicitly, the plaintiffs appear to be arguing the "redemption theory," which the Seventh Circuit has stated

> holds that the federal government went bankrupt when it abandoned the gold standard in 1933 and began converting the physical bodies of its citizens into assets against which it could sell bonds. A tenet of this view is that knowledgeable citizens can redeem these assets and, through manipulating them in various imagined accounts, use them to their advantage.

United States v. Anzaldi, 800 F.3d 872, 875 (7th Cir. 2015). Some proponents of this theory believe that these assets are held in "exemption accounts;" "[m]oreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory—and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as 'redemption'—never have to actually pay for anything." McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citing Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 758–61 (W.D. Va. 2007)). Redemption

7

theory advocates believe that by issuing a birth certificate, the U.S. government made "strawmen" out of its citizens. Id. (quoting Ohio v. Lutz, No. 80241, 2003 WL 152837, at *3 (Ohio Ct. App. Jan. 23, 2003)).

> A person's name spelled in "English," that is with initial capital letters and small letters, represents the "real person," that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the "strawman" is referenced, and the flesh and blood person is not involved.

Id. (quoting Lutz, 2003 WL 152837, at *3). "By filing a UCC–1 financing statement, the flesh and blood person can make a claim against the assets obtained by the government from the 'strawman.' . . . By filing this statement, the Redemptionists believe, the flesh and blood person can draw against the funds earned by the 'strawman.'" Id. (quoting Lutz, 2003 WL 152837, at *3). Courts—including the Seventh Circuit Court of Appeals—have characterized such arguments and theories as legally frivolous, without any conceivable validity. See United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) (collecting cases). The Seventh Circuit has instructed that "[t]hese theories should be rejected summarily, however they are presented." Id. at 767.

The plaintiffs appear to believe that the defendant can redeem their birth certificates or other identification documents with the United States government for money to pay off their debts. This theory has no basis in law. The plaintiffs' bankruptcy trustee has no obligation to attempt to "redeem" their identity documents for money from the government. The plaintiffs are not entitled to specific performance of this non-existent duty. The complaint (what the plaintiffs refer to as the "petition in equity") does not allege that the defendant took any other actions that violated her fiduciary duties as a

8

bankruptcy trustee, so it does not state a claim for breach of any duty to the plaintiffs.

The plaintiffs may be alleging that they had a separate contract with the defendant beyond her duties as bankruptcy trustee. The "Non-Statutory Petition in Equity" does not support this theory. The plaintiffs contend that they sent the August 5, 2025 letter with the "trust documents" to their then-trustee, then "formally transferred" them to the defendant by email. Dkt. No. 1 at 1–2. The plaintiffs state that that the defendant has not "denied, rebutted, or returned the documents, thereby constituting tacit and equitable acceptance." Dkt. No. 1 at 2. "Under Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration." C.G. Schmidt, Inc. v. Permasteelisa North America, 825 F.3d 801, 805 (7th Cir. 2016) (citing Runzheimer Int'l, Ltd. v. Friedlen, 362 Wis. 2d 100, 112 (Wis. 2015)). Although the plaintiffs' email might constitute an "offer" to the defendant, "[a]cceptance of an offer requires 'a meeting of the minds, a factual condition that can be demonstrated by word or deed.'" Carroll v. Stryker Corp., 670 F. Supp. 2d 891, 898 (W.D. Wis. 2009) (quoting Zeige Distributing Co., Inc. v. All Kitchens, Inc., 63 F.3d 609, 612 (7th Cir. 1995)). The defendant's silence does not establish that she "accepted" the plaintiffs' offer to redeem their identification documents for money. There is no evidence that the plaintiffs and the defendant had a meeting of the minds as to the plaintiffs' request. Because the "Non-Statutory Petition in Equity" does not establish the parties had a valid contract, it fails to state a breach of contract claim against the defendant.

The plaintiffs' repeated references to the defendant's "oath of office" or "attorney's oath" do not give rise to a separate claim. The defendant is a private attorney, not an officer of the United States, so she has no federal "oath of

9

office." A third party cannot bring a claim against an attorney for alleged violations of her "attorney's oath"—presumably, the oath an attorney must swear to be admitted to the bar in this state. Neither purported oath imposes a duty on the defendant to perform the actions the plaintiffs request.

For these reasons, the court must dismiss the complaint. Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile because the plaintiffs' claims are jurisdictionally barred and rely on frivolous, rejected legal theories. The court will dismiss this case without leave to amend.

## IV. Conclusion

The court **GRANTS** the plaintiffs' motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of December, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**